**John MAGNUSON, d/b/a John Magnuson Associates, Plaintiff–Appellee–Cross–Appellant,**

v.

**VIDEO YESTERYEAR, Defendant–Appellant–Cross–Appellee.**

Nos. 94–16787, 94–17019 and 95–15369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1996.

Decided June 11, 1996.

Allen Hyman, Law Offices of Allen Hyman, Studio City, California, for defendant-appellant-cross-appellee.

Thomas A. Cohen, Law Offices of Thomas A. Cohen, San Francisco, California, for plaintiff-appellee-cross-appellant.

Before: FERGUSON, D.W. NELSON, and FERNANDEZ, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by Judge FERNANDEZ.

D.W. NELSON, Circuit Judge:

## OVERVIEW

Video Yesteryear ("VY") appeals the district court's holding in favor of John Magnuson d/b/a John Magnuson Associates for copyright infringement under the Copyright Act of 1909. Act of March 4, 1909, ch. 320, 35 Stat. 1075 (codified as amended at 17 U.S.C. § 1 *et seq.*). VY contends that Magnuson lacks standing to sue for copyright infringement because he does not own the rights to the work at issue, a film entitled "Lenny Bruce." VY also argues that the district court erred in refusing to award attorney's fees as part of post-offer costs under Fed.R.Civ.P. 68. Under Rule 68, a party that rejects a settlement offer made at least ten days prior to trial must pay post-offer costs of the offeror if damages awarded do not exceed the amount of the offer. Magnuson cross-appeals the district court's refusal to award him attorney's fees under 17 U.S.C. § 505, which permits the district court to award costs and attorney's fees "in its discretion." He also asserts that VY is not entitled to costs under Rule 68 because the offer was defectively served.

We affirm the decision of the district court with respect to Magnuson's copyright infringement claim and the denial of VY's request for attorney's fees pursuant to Rule 68. We reverse the district court's award of VY's costs. We remand for reconsideration on the question of whether Magnuson should have been awarded attorney's fees pursuant to 17 U.S.C. § 505.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves the rights to "Lenny Bruce," a black-and-white film created by John Magnuson and the American satirist Lenny Bruce. In the film, which was shot in a New York night club in 1965, Magnuson and Bruce sought to convey Bruce's version of the events that gave rise to his arrest and conviction for obscenity. The film was produced by the California corporation, Imagination, Inc. ("Imagination"), of which Magnuson was the chief executive officer. Imagination paid the production and post-production expenses and employed the camera and sound crews for the film, while Bruce was the sole author of the material used in the film. There is no existing written agreement between Bruce, Magnuson or Imagination concerning rights to the film.

Following a suggestion made by Bruce, Magnuson set up a corporation, Columbus Productions, Inc. ("Columbus"), for the purpose of owning the film. Columbus was created on October 10, 1966, subsequent to Lenny Bruce's death. At the time of its creation, Magnuson was sole shareholder and chief executive officer of Columbus. On October 17, 1966, Magnuson held a public screening of the film in San Francisco in order to secure copyright protection under the Copyright Act of 1909. Columbus then applied for copyright registration for the film, listing itself as the "author" and "owner" of the film, and secured copyright registration in March, 1968.

The district court found that Columbus often performed business as John Magnuson Associates and that Magnuson changed the name of Columbus to John Magnuson Associates in the 1970s. Aside from Magnuson, Columbus never had any regular employees. In the seventies, Magnuson licensed the Lenny Bruce film to a number of distributors, including Time/Life Films, Kino International, Virgin Video, EEN and Rhino Home Video. He also made an agreement concerning the division of royalties with the Bruce estate in 1975. These agreements were made under the name of John Magnuson Associates. On October 1, 1979, Columbus was suspended for failure to pay California corporate

franchise taxes. On March 3, 1993, a Memorandum of Assignment of Rights from Columbus Productions, Inc. to John Magnuson was recorded with the U.S. Copyright Office.

In 1979, VY purchased a copy of the Lenny Bruce film which did not include a copyright notice. VY conducted a search with the U.S. Copyright Office to determine whether any film entitled "Lenny Bruce in Concert" had been registered, although the film in question has never gone by that title. The search produced no results, and VY, concluding that the Lenny Bruce film was in the public domain, began marketing the film on video tape in 1979. The video was not authorized by Magnuson and contains a copyright notice claiming a 1983 copyright belonging to VY.

Magnuson filed an action for copyright infringement against VY and trial was scheduled to begin on March 7, 1994, with a pretrial conference set for March 2, 1994. On February 22, 1994, VY sent by Federal Express and by facsimile ("fax") an offer of judgment pursuant to Fed.R.Civ.P. 68 for $3,000. Magnuson's attorney rejected the offer because it was untimely, having been served less than ten court days before the scheduled trial date. The district court held in favor of Magnuson on the copyright claim and awarded $375 in damages. It rejected Magnuson's request for attorney's fees pursuant to 17 U.S.C. § 505. It also rejected VY's request for attorney's fees pursuant to Fed.R.Civ.P. 68, but awarded costs under that rule, finding that the offer had been timely. VY appeals the district court's holding with respect to copyright infringement and its denial of VY's request for attorney's fees. On cross-appeal, Magnuson challenges the district court's award of costs to VY and the denial of its request for attorney's fees.

## STANDARD OF REVIEW

We review the district court's findings of fact following a bench trial for clear error and its conclusions of law de novo. Fed.R.Civ.P. 52(a); *Price v. United States Navy*, 39 F.3d 1011, 1021 (9th Cir.1994). We review de novo the district court's construction of Rule 68. *Herrington v. County of Sonoma*, 12 F.3d 901, 906 (9th Cir.1993). The district court's decision as to whether to

award attorney's fees under the Copyright Act is reviewed for abuse of discretion. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1532 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

## ANALYSIS

### I. *Magnuson's Right to Sue for Copyright Infringement*

VY argues that the district court erred in finding that Magnuson is the owner of the copyright to the Lenny Bruce film and that he therefore has standing to sue for copyright infringement. VY contends that (1) there was not a valid transfer of copyright from Lenny Bruce to Columbus; and (2) even if there was a valid transfer from Lenny Bruce to Columbus, there was not a valid transfer from Columbus to John Magnuson Associates. VY's argument is without merit.

### A. Transfer from Lenny Bruce to Columbus

VY argues that Lenny Bruce alone was the author of the Lenny Bruce film and that Imagination never shared ownership of the copyright to the film as a coauthor. Even if Imagination did hold a copyright to the film, VY asserts, it did not transfer that copyright to Columbus prior to the film's publication on October 17, 1966.

The district court correctly held that the Copyright Act of 1909 is the applicable law in this case because the copyright was secured in 1968, prior to the adoption of the 1976 Act. *See Lone Ranger Television v. Program Radio Corp.*, 740 F.2d 718, 719–20 (9th Cir.1984) (applying the 1909 Act where the original copyright dated back to 1954 and the alleged infringement took place in 1979). Under the 1909 Act, a common law copyright vested in the author or authors of a work at the time of its creation. Copyright Act of 1909, § 2, *reprinted in* 5 *Nimmer on Copyright* (hereinafter *Nimmer*) Appendix 6; *see* 1 *Nimmer* § 2.02 at 2–18.1. A party that commissioned and paid for the production of the work was considered an author and held common law copyright to the work. *Lin–*

*Brook Builders Hardware v. Gertler,* 352 F.2d 298, 300 (9th Cir.1965).

■ Here, the district court found that Imagination and Bruce made a mutual decision to create the film, that Bruce took "clear initiative in directing and undertaking" the filming, and that Magnuson (the owner of Imagination) produced the film and paid for the crews and equipment used in its production. Because these findings are not clearly erroneous, the district court properly held that both Bruce and Imagination held the original common law copyright in the film as commissioning parties.

The district court also found that Lenny Bruce transferred his interest in the film to Imagination and that subsequently, Imagination transferred the common law copyright to Columbus. "Common law copyrights could be transferred either orally, or by implication from the conduct of the parties." 1 *Nimmer* § 5.03[B] at 5–46 (citing *Real Estate Data, Inc. v. Sidwell Co.,* 809 F.2d 366, 374 (7th Cir.1987)). The district court concluded that in suggesting that Magnuson create a new corporation for the purpose of owning the film, Bruce indicated his intent to transfer his rights to Imagination. In addition, it held that by creating such a corporation (Columbus) and transferring the film to the books of the new corporate entity, Imagination effected a valid transfer of the common law copyright to Columbus.

■ The district court found that after the transfer to Columbus of ownership rights in the Lenny Bruce film, Columbus published the work, thereby losing its common law copyright. Under the 1909 Act, common law copyright terminated when a work was published, at which point the work became eligible for federal statutory copyright. *See 1 Nimmer* § 2.02 at 2–18.1. Columbus then applied for and received in 1968 a statutory copyright, registered in the name of Columbus. VY has offered no evidence that indicates the district court's findings on these transfers were clearly erroneous or that Columbus did not hold a valid statutory copyright as of 1968.

## B. Transfer from Columbus to Magnuson

VY argues next that even if Columbus held a valid copyright, it did not transfer ownership of the copyright to Magnuson before Columbus was suspended in 1979. Thus, it asserts, the true owner of the copyright is Columbus, which, as a suspended corporation, does not have the capacity to sue. Cal. Bus. & Tax.C. § 23301. VY challenges testimony offered by Magnuson that "[a]t the time of dissolution, Columbus Productions, Inc. assigned all right, title and interest in the copyright [to the Lenny Bruce film] to John Magnuson d/b/a John Magnuson and Associates." It also contests the validity of a Memorandum of Assignment dated February 1, 1993, and registered with the United States Copyright Office in which the transfer from Columbus to John Magnuson is documented. VY argues that there is no evidence that Columbus ever dissolved and therefore, that the transfer could not have occurred.

■ Like the 1976 Copyright Act, the Copyright Act of 1909 provided that assignment of a copyright had to be made in writing. Copyright Act of 1909 § 28. However, case law holds that under some circumstances a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement. *See 3 Nimmer* § 10.03[A] at 10–39; *Valente–Kritzer Video v. Pinckney,* 881 F.2d 772, 775 (9th Cir.1989); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2d Cir.1982).

In *Eden Toys,* the court addressed a provision in the 1976 Act analogous to the one at issue here, which provides that an exclusive copyright license can only be conveyed in writing. 697 F.2d at 36. The purpose of the requirement that a transfer be in writing, the court explained, was to protect the copyright holder from persons fraudulently claiming to hold licenses. However, it pointed out, where "the copyright holder appears to have little dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke this provision against the licensee." *Id.* Thus, the court held, an oral transfer was valid where it was affirmed by a

subsequent memorandum of transfer executed by the copyright owner. *Id.*

■ The logic of *Eden Toys* is particularly compelling in this case, where the conveyance is between John Magnuson as CEO of Columbus, and John Magnuson as owner of John Magnuson Associates. Thus, we find that the memorandum of conveyance satisfied the writing requirement of the 1909 Copyright Act, even though it was not executed at the time of the transfer.[1] Further, the district court made several factual findings that are not clearly erroneous indicating that Columbus did, in fact, transfer its copyright to John Magnuson Associates in the seventies. In particular, the district court found that Magnuson changed the name of Columbus to John Magnuson Associates in the seventies, making several licensing agreements and concluding an agreement in 1975 with the Bruce estate under that name. Thus, regardless of whether Columbus dissolved in the seventies, the district court did not clearly err when it found that Columbus transferred the copyright to John Magnuson Associates. As a result, Magnuson is the real party in interest and is entitled to sue for copyright infringement.

## II. *Service of VY's Rule 68 Offer*

Magnuson contends that VY's Rule 68 offer was defectively served, and therefore, that neither costs nor attorney's fees should be awarded to VY. We agree.

The district court held that while service by fax was inadequate, service of the offer by Federal Express was acceptable because of "the reality that the offer was received more than ten days prior to the [actual] commencement of the trial." However, the district court declined to take a position as to whether service by Federal Express is permitted by federal or local rules of civil procedure and how such service might affect the computation of the date by which the offer should have been served. It also failed to cite any case law in support of the proposition that actual notice suffices where service of process is defective.

■ In cases involving Rule 68 offers, service of process must comply with Fed. R.Civ.P. 5(b).[2] *Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1986) (holding that an oral offer does not satisfy service requirements of Rule 5(b) in the context of Rule 68); *Stewart v. County of Sonoma,* 634 F.Supp. 773, 775 (N.D.Cal.1986). Service by fax does not satisfy Fed.R.Civ.P. 5(b). *Mushroom Assocs. v. Monterey Mushrooms, Inc.,* 25 U.S.P.Q.2d 1304 (N.D.Cal.1992), 1992 WL 442898 *4; *Salley v. Board of Governors, Univ. of N.C.,* 136 F.R.D. 417, 419 (M.D.N.C. 1991). Thus, the district court correctly held that service of process by fax of the Rule 68 offer was inadequate, even though Magnuson apparently did receive a faxed copy of the offer. The district court erred, however, in holding that service of the offer by Federal Express was adequate. The handful of cases that have addressed the issue of service by Federal Express come almost entirely from district courts outside of this circuit, and they are not consistent. Therefore, we will provide a brief overview of the scant law that exists in this area.

1. *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d 355 (9th Cir.1994) is distinguishable from this case. There, the alleged transfer was between the author and another party, where the author and the other party disputed whether the transfer had occurred and the terms on which it occurred, if it did. The subsequent writing on which the plaintiffs relied did not directly acknowledge that a transfer had occurred or indicate any specific terms. Thus, the problem with the writing in that case was not so much that it was not contemporaneous with the agreement but that it was "not the *type* of writing contemplated by section 204" because it "came far too late to provide any reference point for the parties' license disputes." 16 F.3d at 357. Here, there is no dispute between the transferor and the transferee concern-

ing whether the transfer actually occurred, or the terms on which it occurred. Further, to the extent that some language in *Konigsberg* might be interpreted as requiring a contemporaneous writing even under the facts of this case, it is clearly dicta.

2. Fed.R.Civ.P. 5(b) provides in relevant part:

Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or mailing it to the attorney or party at the attorney's or party's last known address, or, if no address is known, by leaving it with the clerk of the court.... Service by mail is complete upon mailing.

■ Under the Federal Rules of Civil Procedure, manner of service of process is addressed in both Rule 4 [3] and Rule 5. Rule 4 addresses the procedure to be followed when serving a complaint. Rule 5 specifies the procedure to be followed when serving other papers, including offers of judgments. Both rules contain provisions for service by mail. However, Rule 4, unlike Rule 5, allows a litigant to opt for state law procedures in serving a complaint instead of the federal procedure. Fed.R.Civ.P. 4(c)(2)(C)(i). The service-by-mail provisions of Rule 4 are a relatively recent innovation, adopted in a 1983 amendment. In contrast, Rule 5 has permitted service by mail since its adoption, in 1937.

The Seventh Circuit has held that delivery by Federal Express is not "mail" for the purposes of Rule 4. *Audio Enterprises, Inc. v. B & W Loudspeakers*, 957 F.2d 406, 409 (7th Cir.1992). In *Audio Enterprises*, the court reasoned that "Rule 4(c)(2)(C)(ii) specifies first class mail, postage prepaid. Federal Express is not first class mail." *Id*. Similarly, the Fifth Circuit has held that Federal Express is not mail for purposes of Fed.R.App.P. 25(a).[4] *Prince v. Poulos*, 876 F.2d 30, 32 n. 1 (5th Cir.1989). The *Prince* court rejected the appellant's argument that the appellee's brief should have been delivered by Federal Express to satisfy the requirement of Rule 25(a) that the most "expeditious form of delivery by mail" be utilized. The court relied upon the definition of "mail" in Webster's New Collegiate Dictionary (1973), which defines mail as "letters ... conveyed under public authority." *Id.* at 32 n. 1. Because Federal Express delivery service is not public authority, the court reasoned, it is not mail.

On the basis of these two cases, the authors of the practice guide *Federal Civil Procedure Before Trial* make the general statement that "[d]elivery by Federal Express or other private overnight delivery service does not constitute 'service by mail' under the Federal Rules." William W. Schwarzer *et al., Federal Civil Procedure Before Trial,* § 12:84 (1996). However, as late as 1993, the practice guide stated that "[o]vernight delivery services (e.g. Federal Express) should probably be treated as the equivalent of mailing for purposes of service." *Id.,* § 12:84 (1993). This reversal reflects the degree of uncertainty that characterizes this area of the law.

In fact, two district court cases have held that Rule 5 allows service by Federal Express. In *Edmond v. U.S. Postal Service,* 727 F.Supp. 7, 11 (D.D.C.1989), the court held that a plaintiff had been validly served by Federal Express under Rule 5(b). The court cited no authority and provided no explanation of its reasoning. In another case, *United States v. Certain Real Property and Premises Known as 63–29 Trimble Road,* 812 F.Supp. 332, 334 (E.D.N.Y.1992), the court followed *Edmond,* finding that service by Federal Express satisfied Fed. R.Civ.P. 5(b). The court in *Trimble Road* explained that Rule 5, in contrast to Rule 4, does not prohibit service by Federal Express because it does not specify that service must be made by first class mail, postage prepaid, as does Rule 4. *Id.* It also distinguishes *Prince v. Poulos* by noting that that case involved Fed.R.App.P. 25 and whether service by Federal Express was required, rather than permitted. *Id.*

If there is any question of whether the term "mail" encompasses private delivery services today, there is little doubt that

---

**3.** Fed.R.Civ.P. 4(c)(2)(C) provides in relevant part:

(C) A summons and complaint may be served upon a defendant ...
(ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this

rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by (d)(1) or (d)(3).

**4.** Fed.R.App.P. 25(a) provides, in relevant part, that "briefs ... shall be deemed filed on the day of mailing if the most expeditious form of delivery by mail, excepting special delivery, is utilized."

"mail" meant "U.S. mail" in 1937, when Rule 5 was adopted. The suggestion that in failing to specify that mail must be "first class, postage prepaid" Rule 5 was intended to authorize service by private delivery service in an era that predates modern overnight delivery services makes little sense. Thus, the distinction drawn by the *Trimble Road* court does not withstand scrutiny, and this panel declines to adopt the rule of *Trimble Road* and *Edmond.*

Nor, on a practical level, does it make sense to adopt an approach that interprets the term "mail" differently for the purposes of different rules within the Federal Rules of Civil Procedure. If we were to hold that Federal Express is "mail" for the purposes of Rule 5 (even though it is not for Rule 4), we would then have to address whether Federal Express is "mail" under Rule 6(e), which adds three days to computations of time where service is by mail. Given that Federal Express is generally used for overnight delivery, one could argue that Congress did not intend that Rule 6(e) apply to service by Federal Express, *i.e.*, that Federal Express is *not* mail under Rule 6. It seems clear that in interpreting the term "mail" differently for the purposes of different rules within the Federal Rules of Civil Procedure, courts are likely to cause great confusion. Thus, we hold that Federal Express does not satisfy the requirements of Rule 5(b).

Furthermore, the local rules for district courts in the Northern District of California that were applicable at the time of service in this case also did not permit service by Federal Express. Prior to their amendment in 1995, these rules allowed service by mail but did not explicitly define "mail." However, they did specify that "[a]ll papers required to be served shall, when served by mail, be served by first class or priority mail...." Local Rules of Practice for the United States District Court for the Northern District of California, Rule 210–2 (1994). As the court stated in *Audio Enterprises,* "Federal Express is not first class mail." 957 F.2d at 409. Neither is it priority mail. (In 1995,

the local rules for the Northern District of California added a provision allowing service by private delivery service or fax with the written consent of the receiving party. *See* Local Rule 5–3.)

▮ Thus, the next question we must address is whether actual notice in this case suffices. We hold that it does not. In *Salley,* the court stated that

> actual notice by a means other than that authorized by Rule 5(b) does not constitute valid service and is not an exception to the rule. Therefore, a party must advance some other compelling circumstance, in addition to actual notice in order to have the Court excuse noncompliance with Rule 5(b).

136 F.R.D. at 420. In that case, the plaintiff alleged that service of a discovery request by fax was invalid. *Id.* at 420. The court found "exceptional good cause" because the receiving party had explicitly consented to service of discovery requests by fax on several previous occasions. *Id.* We adopt the rule of *Salley* and require that a party demonstrate exceptional good cause for failing to comply with Rule 5(b).

Here, there is no indication of good cause. VY declined to address Magnuson's argument that the offer was not validly served, or alternatively, untimely, in either its opening or reply briefs. It has not explained why it could not have served Magnuson personally and has not presented evidence that Magnuson consented to service by fax or by Federal Express. Because VY did not serve its Rule 68 offer in compliance with Fed.R.Civ.P. 5(b) and did not offer good cause for its failure to validly serve the offer, we reverse the district court's award of costs to VY pursuant to Rule 68.

III. *Denial of Magnuson's Request for Attorney's Fees under 17 U.S.C. § 505*

Magnuson asserts that the district court should have awarded him attorney's fees under 17 U.S.C. § 505.[5] He argues that while

---

**5.** 17 U.S.C. § 505 provides:

In any civil action under [the Copyright Act], the court in its discretion may allow the recov-

ery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the

it is in the discretion of the district court to award attorney's fees, the court should have considered the factors listed in *Fogerty v. Fantasy*, 510 U.S. 517, —— n. 19, 114 S.Ct. 1023, 1033 n. 19, 127 L.Ed.2d 455 (1994) in making its determination. Instead, he contends, the district court considered only whether VY acted in bad faith in denying his request for attorney's fees.

 This court has emphasized that in considering motions for attorney's fees under § 505 of the Copyright Act, the district court should "seek to promote the Copyright Act's objectives." *Historical Research v. Cabral*, 80 F.3d 377, 378–79 (9th Cir.1996) (remanding for reconsideration the denial of attorney's fees under § 505 where the district court correctly recited the *Fogerty* factors but erroneously stated that *Fogerty* prohibits an award of fees absent "exceptional circumstances"). Relying on *Fogerty*, this court has enumerated several factors which the district court should consider, including "the degree of success obtained; frivolousness; motivation; objective unreasonableness ... and the need in particular circumstances to advance considerations of compensation and deterrence." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir.1994); *see also Fogerty*, 510 U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19.

 In this case, we are particularly concerned that the small award for damages in this case is insufficient to deter future copyright infringements such as the one at issue here. The district court concluded that "Video Yesteryear should have suspected the film print it bought was unauthorized." Moreover, VY's entire defense rested upon the fortuitous fact that Columbus's corporate status had lapsed, a fact of which VY was not aware until this litigation commenced and which in no way contributed to VY's copyright infringement. Because it is not apparent from the district court's decision that it considered the factors listed in *Fogerty*, particularly the goal of deterring future copyright infringements, we remand for reconsideration of this issue.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

court may also award a reasonable attorney's

FERNANDEZ, Circuit Judge, dissenting:

Video Yesteryear's behavior is far from appealing, and a finding that the late writing was sufficient does help Magnuson. It does not help authors in general. I believe that the decision of this case is controlled by *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355 (9th Cir.1994). I recognize that there are factual differences between this case and that one, but there are always factual differences between cases. In this instance, I do not think that those differences distinguish the principles involved.

*Konigsberg* is not just about direct conflicts between apparent copyright holders and those who claim to have rights in the copyright. Indeed, it hardly could be. It is also about marketability and protecting third parties who want to deal with the true owner. Under Magnuson's theory, third parties cannot know who really owns a copyright. They can be dragged through litigation by a person who does not have any apparent ownership rights, but who might eventually be able to obtain some kind of memorandum which may confirm an earlier transfer. For that matter, they might deal with an apparent owner, who later writes something that might be called a memorandum of an earlier agreement. They might be plunged into litigation, and it might turn out that the apparent owner, to his surprise, had no rights at all. None of that advances Congress's goal of enhancing "predictability and certainty of copyright ownership...." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). Instead, it leaves the matter open until a time far in the future—here 17 years in the future. It advances the goals of those who "do lunch, not contracts." *Id.* at 556.

I do agree that Congress wanted to protect authors. Perhaps that was Congress's primary goal. However, the rule that Magnuson has argued for does not do that at all. Indeed, both of our prior cases which touched on this subject were attempts to take away the author's rights. *See Konigs-*

fee to the prevailing party as part of the costs.

*berg,* 16 F.3d at 356 (attempt to claim that a letter written three and a half years later was the requisite writing); *Valente–Kritzer Video v. Pinckney,* 881 F.2d 772, 774–75 (9th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990) (claim that a letter from a lawyer was the requisite writing). The rule that requires a writing—Congress's rule and *Konigsberg*'s rule—protects authors. What is the worst thing that can happen if an essentially contemporaneous writing is required? Well, in the absence of that writing the prior owner will be deemed to have the copyright; he will be protected. Not only that, he will not be subjected to claims that some stray writing of his confirms an ancient oral agreement which transferred the copyright to someone else. By the same token, third parties will be protected.

Only in a case as unusual as this one can it seem that there is less protection for the author. And even here, all the *Konigsberg* rule would provide is that the record owner, Columbia, is still the owner. That is not so terrible. If Magnuson does have absolute control over Columbia, he can exercise that control and obtain a proper contemporaneous transfer. Perhaps that will require corporate revitalization or dissolution. *See, e.g.,* Cal.Rev.Tax Code §§ 23301, 23301.5, 23302 and 23304.1. Even that would not be so bad; it would take the corporate form seriously and would enforce the rules of California law regarding corporations. The corporate form is one upon which much of our economy rests. I see nothing bad about requiring Magnuson to follow state corporation principles as he goes about his business.

In short, the difficulties that uncertainty causes to authors and to third parties supply the reason for Congress's requirement of a writing and supply a reason for us to embrace *Konigsberg* rather than finding ways to undermine the statute. Again, in the long run the alternative approach presents a severe danger to authors, who can be subjected to inventive claims that they somehow lost their copyright protections by some oral agreement made years earlier. Therefore, I agree with *Konigsberg*'s doubts about *Eden Toys, Inc. v. Florelee Undergarment Co.,*

*Inc.,* 697 F.2d 27, 36 (2d Cir.1982), and similar cases. Those cases point the way toward destabilization of this area of the law. *Konigsberg* was right and should be followed. The contrary course could create copyright's cockatrice.

Thus, I respectfully dissent.