Deniz VARGAS, a minor by and through her mother Anita GALLARDO, Plaintiff–Appellant,

v.

DEL PUERTO HOSPITAL; Burton B. Butler; Patterson District Ambulance, Defendants–Appellees.

No. 95–17326.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1996.

Decided Oct. 30, 1996.

Laurence F. Padway, Padway & Padway, Oakland, California, for plaintiff-appellant.

Mitchell C. Tilner, Horvitz & Levy, Encino, California, for defendant-appellee.

Curtis A. Cole, Thelen, Marrin, Johnson & Bridges, Los Angeles, California, for amicus.

Before: SKOPIL, and FLETCHER, Circuit Judges, and RHOADES, District Judge.*

SKOPIL, Circuit Judge:

We examine in this appeal the certification requirements of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Specifically, we must decide if a hospital is liable for damages when it permits an unstable patient to be transferred but fails to comply fully with the Act's requirement that a physician include in the transfer certificate a written summary of the specific risks to the patient of effecting the transfer. The district court permitted evidence demonstrating that the hospital complied with the substantive requirements of the Act and refused to premise EMTALA liability on the hospital's failure to comply strictly with the certification requirement. We conclude that the district court's assessment of the evidence and its conclusions of law are sound. Accordingly, we affirm.

## I.

On May 22, 1993, Deniz Vargas, an 18-month old infant, was brought by her mother to Del Puerto Hospital's emergency room. Del Puerto is a small, rural hospital in Patterson, California. Its emergency room is staffed by one doctor and one registered nurse per shift. Dr. Burton Butler was the physician on duty when Vargas was admitted. Dr. Butler evaluated Vargas and correctly diagnosed that she was having seizures. He unsuccessfully attempted to control the infant's seizures with various medications. He thereafter contacted the physician on duty at Doctors Medical Center, a larger hospital approximately 25 minutes away, about transferring her. According to Dr. Butler, the transfer was necessary because at the larger hospital Vargas would receive treatment from a pediatric intensive care unit.

Before Vargas was transferred, Dr. Butler completed and signed a "Physician Certification." In the space provided for "Reasons for transfer, including summary of risks and benefits," Dr. Butler wrote: "Need pediatric intensive care not available here." In addition, on the "Interfacility Transfer Summary" signed by Dr. Butler, a box was checked noting that "[t]he benefits of treatment at receiving facility outweigh risks of emergency transfer." The transfer certificate did not include a written summary of the specific risks of transfer.

---

* The Honorable John S. Rhoades, United States District Judge for the Southern District of California, sitting by designation.

Approximately one hour and fifteen minutes after arriving at Del Puerto, Vargas was taken by ambulance to Doctors. At Doctors, Vargas was stabilized and her seizures controlled. As a result of the seizures, however, Vargas is quadriplegic. She is also blind, unable to speak and is mostly fed through a tube in her stomach.

Vargas brought this action through her guardian ad litem, alleging violation of EMTALA and negligence under California law. The negligence claim was settled prior to trial. The EMTALA claim was tried to the court based on stipulated facts and the testimony of two experts. The district court concluded that Dr. Butler genuinely weighed the risks and benefits to the child before deciding to transfer her, and rejected Vargas' argument that the inadequate completion of the certificate itself violated EMTALA. We review the district court's findings of fact for clear error and its conclusions of law de novo. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir.1996).

## II.

Congress enacted EMTALA, commonly known as the Patient Anti–Dumping Act, in response to concerns that hospitals were transferring or refusing to treat patients who were unable to pay. *James v. Sunrise Hosp.*, 86 F.3d 885, 887 (9th Cir.1996). To address these concerns, EMTALA requires hospitals to take certain steps whenever an individual requests emergency medical treatment. First, the hospital must provide an appropriate medical screening examination. 42 U.S.C. § 1395dd(a). Thereafter, if the hospital determines that the individual has an emergency medical condition, the hospital must either attempt to stabilize the condition or transfer the individual to another facility. 42 U.S.C. § 1395dd(b)(1). The hospital may not, however, transfer an individual in an unstable condition unless

a physician ... has signed a certification that based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased

risks to the individual ... from effecting the transfer. . . .

. . .

*A certification ... shall include a summary of the risks and benefits upon which the certification is based.*

42 U.S.C. § 1395dd(c)(1) (emphasis added).

It is undisputed that Vargas received an appropriate medical screening examination at Del Puerto, that she came to the Del Puerto emergency room with an emergency medical condition, and that Vargas' condition was unstable when she was transferred to Doctors. The only issue before us is whether Dr. Butler's failure to include a written summary of the specific risks of transfer on the transfer certificate makes Del Puerto liable under EMTALA. Given the legislative purpose underlying the Act, the internal structure of EMTALA, and the record in this particular case, we conclude that it does not.

The crux of Vargas' argument on appeal is that the district court erred in looking to anything other than what is written on the transfer certificate to determine Del Puerto's EMTALA liability. She contends that Dr. Butler's failure to include a written summary of the risks on the certificate makes Del Puerto just as liable as if Dr. Butler, for example, had failed to give her an appropriate medical screening examination when she was first admitted. We decline to give this record-keeping provision of EMTALA the excessively literal interpretation that Vargas invites. *See Malat v. Riddell*, 383 U.S. 569, 571–72, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966) ("Departure from a literal reading of statutory language may ... be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose."); *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 804 (9th Cir.1989) (same).

Section 1395dd(c)(1) requires a transferring physician to include a summary of both the risks and the benefits of transfer. Thus, there is little doubt that Dr. Butler failed to comply with the specific "technical" requirements of the statute. We must, however, consider the Act's statutory language in light of the objectives that Congress sought

to achieve. The certification requirement is part of a statutory scheme with an overarching purpose of ensuring that patients, particularly the indigent and underinsured, receive adequate emergency medical care. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir.1995) (citing H.R.Rep. No. 241, 99th Cong., 1st Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 726–27). The purpose of the certification requirement in particular is to ensure that a signatory physician adequately deliberates and weighs the medical risks and medical benefits of transfer before effecting such a transfer.

Congress surely did not intend to limit the inquiry as to whether this deliberation process in fact occurred to an examination of the transfer certificate itself. While such a contemporaneous record may be the best evidence of what a physician was thinking at the time, we cannot accept the proposition that the only logical inference to be drawn from the absence of a written summary of the risks is that the risks were not considered in the transfer decision. Other factors might account for the absence of such a summary, such as the time-pressure inherent in emergency room decision-making. Although a contemporaneous record is certainly preferable, we believe it would undermine congressional intent to foreclose consideration of other evidence surrounding the transfer decision. *See Romo v. Union Memorial Hosp., Inc.*, 878 F.Supp. 837, 844 (W.D.N.C.1995) (absence of summary of risk and benefits on transfer certificate does not create EMTALA liability as a matter of law, but creates a jury question as to whether risk/benefit analysis was properly made by physician).

The internal structure of the EMTALA statute further supports our conclusion. The provision authorizing a private right of action permits recovery for "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section." 42 U.S.C. § 1395dd(d)(2)(A). We cannot envision how a physician's failure to write down the risks of transfer could be the direct cause of a patient's harm. That being the case, we believe that a sensible, nontechnical interpre-

tation of the record-keeping provisions of EMTALA is required. Personal harm most certainly can result from a failure to perform a risk/benefit assessment before transferring a patient in an unstable condition. Thus, it is the failure to *undertake* that assessment that results in EMTALA liability, not merely the partial failure to summarize the risks and benefits in writing. *See Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 523 (10th Cir.1994) (hospital's "slight," "purely formalistic" and "de minimus" deviations from required procedures do not violate EMTALA). We therefore conclude that a hospital can remedy a technical deficiency in certification procedures by establishing with sufficient evidence that a risk/benefit assessment was in fact performed. *Cf. Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 858 (4th Cir.1994) (permitting hospital to offer rebuttal evidence once a plaintiff makes a threshold showing of differential treatment under EMTALA).

In rejecting Vargas' argument that Dr. Butler's failure to list the specific risks of transfer on the transfer certificate itself gives rise to EMTALA liability, the district court noted:

> The medical experts both agreed that Dr. Butler was confronted with an acute medical emergency. Time was imperative because while the child was seizing, her oxygen supply was inadequate. The testimony revealed that the risk of serious damage increased as she continued to seize. Dr. Butler administered various types of medical care which failed to stop the seizures. He then telephoned the transferee hospital to ensure it could provide treatment, informed a physician there of the child's condition, filled out the pre-printed form certificate, and wrote the benefits of transfer onto the form.

Moreover, Vargas' own expert at trial testified that, after reviewing the documentation and depositions in the case, he understood that Dr. Butler believed it "was in the best interest of this child" to transfer her to a more sophisticated hospital with a pediatric intensive care unit. Based on this evidence, the district court correctly determined that Dr. Butler genuinely weighed the risks and

**1206**

benefits of transfer, and refused to premise EMTALA liability on a technical deficiency in the certification procedure.

### III.

We must reject Vargas' assertion that a hospital incurs EMTALA liability every time a physician—in the heat of emergency room decision-making where every minute is critical—certifies in writing that the benefits outweigh the risks associated with the transfer, summarizes in writing the precise benefits to derive from the transfer, yet fails to include a written summary of the attendant risks. We conclude that a hospital cannot become liable under EMTALA for what amounts to a clerical deficiency in record-keeping where the evidence indicates that the transfer was effected for medical reasons. In light of our conclusion, we need not address the dispute between the parties over whether liability under EMTALA can be limited by a state cap on general damages in medical malpractice claims.

**AFFIRMED.**