**SELF–REALIZATION FELLOWSHIP CHURCH, a California corporation, Plaintiff–Appellant,**

v.

**ANANDA CHURCH OF SELF–REALIZATION, a California corporation; Fellowship of Inner Communion, a California corporation; James Walters, aka Sri Kriyananda, Defendants–Appellees.**

No. 97–17407.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2000.

Decided March 23, 2000.

Louis P. Petrich, Leopold, Petrich & Smith, Los Angeles, California, for the plaintiff-appellant.

Glenn W. Trost, Coudert Brothers, Los Angeles, California, for the defendants-appellees.

Before: SCHROEDER, NOONAN, and TASHIMA, Circuit Judges.

SCHROEDER, Circuit Judge:

This litigation war between two rival churches concerns copyrights to the writings, photographs, and sound recordings of Swami Paramahansa Yogananda. The plaintiff, Self–Realization Fellowship Church ("SRF"), claims that it holds valid copyrights to all of the works. The defendants and admitted copiers are a breakaway church and its leader, Ananda Church of Self–Realization and James Walters ("Ananda"). They contend that none of the copyrights are valid.

The district court granted summary judgment in favor of Ananda. On appeal, SRF raises various issues. The most important are whether the works of a religious leader, living under a vow of poverty in the church he founded, can be considered "works for hire" or the works of a "corporate body" within the meaning of the 1909 Copyright Act and, in the alternative, whether SRF has adduced evidence from which a jury could conclude that a valid assignment of common law copyrights occurred.

With regard to Yogananda's writings and spoken lectures, we hold that the works are not works for hire or the works of a corporate body, so that the common law copyrights did not vest in the church as a matter of law. We hold that there are triable issues with regard to the purported assignments and remand for further proceedings on those issues. We also hold that there is a triable issue regarding whether some of the photographs involved in this appeal were works for hire.

BACKGROUND

Yogananda, a monk of the Swami order, founded SRF in 1935 when he arrived in

California from India. Until his death in 1952, Yogananda lived in quarters that SRF provided and received from SRF a small monthly stipend. Yogananda served as SRF's president and as a member of its board of directors. While living at SRF, Yogananda wrote books and articles and gave religious lectures. The lectures were recorded and later published by SRF. SRF arranged for the publication of Yogananda's books, and published the articles in its own magazine. SRF also published in its magazine various photographs of Yogananda and other SRF leaders.

In the district court, both parties introduced evidence of Yogananda's relationship with SRF and his intent regarding the ownership of his works and the copyrights to those works. For example, Yogananda observed a vow of poverty, which led him to assign all of his possessions to SRF in a written assignment dated May 28, 1935. The assignment transferred to SRF Yogananda's "books, lessons, monthly araeceptum, furnitures, personal properties including shawls, blankets, portable temple of silence, my handwritings, typewriters, mimeograph machine, cooking utensils and all machinery, icebox, files, victrola, radio, and/or any other personal property which I may own and which is not described or enumerated herein." In 1939, Yogananda signed a standard SRF form agreeing to renounce any claim for compensation in exchange for "the privilege of being accepted as a worker" by SRF. SRF obtained copyrights on most, but not all, of Yogananda's published books in its own name, describing several of them as "works for hire." Of particular relevance to Ananda's position is the fact that in 1951 Yogananda entered into an agreement with an individual hired to translate six of his works into Spanish for distribution in Mexico. The agreement provided that the "Mexican copyrights" to the English and Spanish versions of those six works would be obtained in Yogananda's name rather than the name of the translator.

Ten years after Yogananda's death, James Walters, also known as Sri Kriyan-anda, left SRF and formed Ananda, a rival church dedicated to the teachings of Yogananda. Ananda admits to copying the books, articles, recordings, and photographs involved in this appeal. SRF filed an infringement action in 1990. We decided an earlier appeal regarding trademark claims in 1995. *See Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902 (9th Cir.1995). The district court entered a final judgment disposing of all copyright claims in 1997, and this appeal followed.

## DISCUSSION

Because all of the copied works were created before 1978, the Copyright Act of 1909 governs the validity of the initial copyrights. *See Roth v. Pritikin,* 710 F.2d 934, 938 (2d Cir.1983). These initial statutory copyrights ran for a 28 year term. *See* 17 U.S.C. § 24 (repealed). Under the 1909 Act, the holder of the common law copyright at the time of publication, either the author or the author's assignee, was the party entitled to receive statutory protection. *See Urantia Found. v. Maaherra,* 114 F.3d 955, 960 (9th Cir.1997). Assignments did not have to be in writing to be enforceable. *See Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428 (9th Cir.1996). Authors could assign their common law copyrights "without the necessity of observing any formalities." *Urantia Found.,* 114 F.3d at 960.

Blanket copyrights on magazines were sufficient to "protect all the copyrightable components of the work copyrighted" and gave to the copyright proprietor "all the rights which he would have if each part were individually copyrighted under" the Act. 17 U.S.C. § 3 (repealed). The weight of the case law has concluded that this means that a blanket copyright gives a magazine publisher rights in an individual contribution only if the publisher owns the common law copyright as the author of the contribution, or as the author's assignee. *See Mail & Express Co. v. Life Pub. Co.,* 192 F. 899, 900 (2d Cir.1912); *The*

# 1326

*Williams & Wilkins Co. v. United States,* 172 U.S.P.Q. 670, 675 (Ct.Cl.1972); *Kinelow Publ'g Co. v. Photography in Bus., Inc.,* 270 F.Supp. 851, 853 (S.D.N.Y.1967); *Ilyin v. Avon Publications, Inc.,* 144 F.Supp. 368 (S.D.N.Y.1956); *Kaplan v. Fox Film Corp.,* 19 F.Supp. 780 (S.D.N.Y. 1937).

The 1909 Act did not extend any protection to sound recordings, however. With respect to Yogananda's recorded lectures, SRF claims a common law copyright enforceable under California law. *See Klekas v. EMI Films, Inc.,* 150 Cal.App.3d 1102, 1108–09, 198 Cal.Rptr. 296 (1984) (explaining that before passage of the 1976 Act, works not protected by the federal copyright statute were protected by state law). Cal. Civ.Code § 980 extends common law copyright protection to sound recordings, and Cal. Civ.Code § 982 permits authors to transfer their rights in such works.

The copying at issue in this appeal took place at various times after 1962. Some works were copied during the initial copyright term, and some during the renewal term. The principal issues with respect to the works authored by Yogananda are, first, whether the works were "works for hire" or works produced by a "corporate body" within the meaning of the 1909 Act, and if not, whether Yogananda validly assigned his common law copyrights to SRF. The district court held that the works were neither works for hire nor produced by a corporate body, and we agree. The district court further held that there was no valid common law copyright assignment to SRF. We disagree, and hold that SRF has presented triable issues regarding assignment.

Assuming that SRF can establish the validity of its initial copyright in each work, we must also decide a separate set of issues with respect to copying that took place during the works' renewal terms. This is because under the 1909 Act, renewal rights revert in most circumstances to the author's next of kin where, as here, the author was not living at the time the initial

copyright expired. We hold that SRF was not entitled to renew its copyrights in books authored by Yogananda. We hold, however, that SRF was entitled to renew any valid initial copyrights in Yogananda's articles.

## I. Works For Hire

SRF contends that it holds valid initial and renewal copyrights in Yogananda's writings through the "work for hire" doctrine. *See* 17 U.S.C. § 26 (repealed) (stating that the word 'author' shall include an employer in the case of works made for hire). This circuit has summarized the work for hire doctrine as follows: "[W]hen one person engages another, whether as employee or as an independent contractor, to produce a work of an artistic nature, ... in the absence of an express contractual reservation of the copyright in the artist, the presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose instance and expense the work is done." *Lin–Brook Builders Hardware v. Gertler,* 352 F.2d 298, 300 (9th Cir.1965). To survive summary judgment on a claim of work for hire, SRF must "present some credible evidence that [Yogananda's] work was done at the instance and expense" of SRF. *Dolman v. Agee,* 157 F.3d 708, 712 (9th Cir.1998).

The Second Circuit has described the "instance and expense" test under the 1909 Act as an inquiry into whether "the motivating factor in producing the work was the employer who induced the creation." *Playboy Enter., Inc. v. Dumas,* 53 F.3d 549, 554 (2d Cir.1995). SRF has not introduced evidence that would demonstrate that it was at SRF's "instance" that Yogananda decided to write, teach, and lecture. Works motivated by Yogananda's own desire for self-expression or religious instruction of the public are not "works for hire." Furthermore, Nimmer explains that throughout much of the life of the 1909 Act, courts applied the work for hire doctrine only to traditional, hierarchical rela-

tionships in which the employee created the work as part of "the regular course of business" of the employer. Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 5.03[B][1][a][i] (1999). In the last decade that the Act was effective, courts expanded the concept to include less traditional relationships, as long as the hiring party had "the right to control or supervise the artist's work." *Id.* We have described the rationale for the doctrine as a presumption that "the parties expected the employer to own the copyright and that the artist set his price accordingly." *May v. Morganelli–Heumann & Assocs.,* 618 F.2d 1363, 1368 (9th Cir.1980). SRF's relationship with Yogananda was not the type of traditional relationship in which such a presumption would necessarily hold. Moreover, there was no evidence of supervision or control of Yogananda's work by SRF. Yogananda's works were thus not "works for hire."

## II. Corporate Body

█ The 1909 Act also refers in its renewal provision, 17 U.S.C. § 24 (repealed), to works copyrighted by a "corporate body." We conclude that Yogananda did not create his works as part of a corporate body. Like many other courts, we have not had occasion to interpret this part of section 24 of the 1909 Act, but the Second Circuit has noted that "what authoritative commentary exists concerning the 'corporate body' provision of § 24 indicates that it has no application to works ... which are authored and produced by one identifiable person either as an employee for hire or as an independent author." *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 748 (2d Cir.1975) (citing Barbara Ringer, *Renewal of Copyright,* in *Report of the Register of Copyrights on the Revision of the U.S. Copyright Law,* Study No. 31, at 136–37 (1960)).

The little case law that there is regarding the "corporate body" exception thus indicates that it has no application to cases in which a single, identifiable individual rather than a faceless corporate mass has created the work in question. *See Donald-*

*son Publ'g Co. v. Bregman, Vocco & Conn, Inc.,* 375 F.2d 639, 643 (2d Cir.1967) (stating that the meaning of the corporate body clause in section 24 "is not entirely plain" but that "its scope is quite limited"). SRF offers no more reasonable interpretation of the phrase. We therefore conclude that the district court correctly held that SRF did not hold copyrights to Yogananda's works through the corporate body doctrine.

## III. Assignment

█ Even if Yogananda did not create his works directly for SRF as works for hire or as part of a corporate body, SRF's initial copyrights are still valid if before publication SRF received from Yogananda an informal assignment of his common law copyrights. *See Urantia Found.,* 114 F.3d at 960. Such assignments did not have to be in writing to be enforceable. *See Magnuson,* 85 F.3d at 1428 (stating that under the 1909 Act, common law copyrights could be transferred orally or by implication from the conduct of the parties).

SRF points to several factual matters established in the record: the 1935 Assignment from Yogananda to SRF of all his possessions; Yogananda's vow of poverty; Yogananda's general acquiescence in SRF's decision to copyright many of his works in its name; and SRF's physical possession of the manuscripts. These, SRF contends, constitute conclusive evidence that Yogananda informally assigned to SRF his common law copyrights in his books and periodical articles. Furthermore, SRF obtained initial statutory copyrights in its own name in the books written by Yogananda at issue in this appeal, and these copyrights are entitled to a presumption of validity under the 1909 Act because of the registration in SRF's name. *See* 17 U.S.C. § 209 (repealed) (stating that a certificate of copyright registration "shall be admitted in any court as prima facie evidence of the facts stated therein").

Ananda, for its part, submitted evidence showing that Yogananda obtained copy-

rights on other works, not at issue in this appeal, in his own name. Ananda also offered an interpretation of Yogananda's vow of poverty indicating the vow was less than a complete renunciation of property rights. Ananda characterizes Yogananda's vow as "simple," rather than "solemn," arguing that Yogananda intended to retain some personal property and only wished to disavow profits. Ananda also points to the evidence that Yogananda sought to obtain Mexican copyrights in his own name, thus suggesting that Yogananda never intended to transfer any of his common law U.S. copyrights to SRF.

■ The district court characterized as "critical" the fact that some of SRF's copyright certificates describe SRF as the owner of a work for hire rather than an assignee. This circuit has held, however, that a party's own descriptions of the nature of its copyright at the time of copyright registration or renewal is not conclusive. *See Urantia Found.,* 114 F.3d at 963. *Cf. Lin–Brook,* 352 F.2d at 300 (holding that work could be a "work for hire" as a matter of law despite employer's decision to receive it through assignment from employee). Such descriptions may be self serving, and the copyright laws are not to be applied mechanically, facilitating premature injection into the public domain, but rather in a "fair and non-formalistic" manner. *See Urantia Found.,* 114 F.3d at 963.

■ The district court ultimately agreed with Ananda, accepting its interpretation of the vow of poverty and placing weight on the fact that not all of the works Yogananda produced during his lifetime were copyrighted in SRF's name. The existence of a transfer or assignment of common law copyright, however, is a factual question of the author's intent. *See id.* at 960. The 1935 assignment is not dispositive as to Yogananda's writings after 1935, but it is relevant to this factual issue. While a jury may conclude that on balance the evidence demonstrates that Yogananda had no intent to transfer to SRF his common law copyrights, at the summary judg-

ment stage, a district court is entitled neither to assess the weight of the conflicting evidence nor to make credibility determinations. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). SRF has introduced sufficient evidence to create a triable issue as to whether it held valid initial copyrights to Yogananda's writings through an informal assignment of Yogananda's common law copyrights. We therefore reverse the district court's grant of summary judgment with regard to any works copied in their initial copyright terms, and remand for further proceedings.·

## IV. Right of Renewal

With regard to writings copied during their renewal terms, SRF must establish its initial copyright and, in addition, establish that it was entitled to renew any validly obtained initial copyrights. The 1909 Act vested renewal rights in the author, if still living at the .time the initial copyright term expired, or the author's next of kin or executor if the author was deceased. *See* 17 U.S.C. § 24 (repealed). The 1909 Act contained only four exceptions to this exclusive right of reversion. A copyright owner who was not the original author could renew copyrights in (1) posthumous works, (2) periodical, encyclopedic, and composite works, (3) works copyrighted by a corporate body (other than as an assignee or licensee of the original author), and (4) works made for hire. *See id.*

■ The word "posthumous," as it is used in copyright law and embodied in the first exception, is a term of art that refers to works unpublished at the time of the author's death in which the author at all times maintained the common law copyright. *See Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 944 (2d Cir.1975). SRF does not claim that this exception applies. The third and fourth exceptions do not apply because, as we have already held, the work for hire and corporate body doctrines do not apply to Yogananda's writings as a matter of law. The only possible

exception available to SRF at this point is the exception for "periodical, encyclopedic, and composite works."

■ With regard to books copied during their renewal terms, the district court's grant of summary judgment for Ananda must be affirmed. The books are not periodical, composite or encyclopedic works, nor does SRF contend that they are.

■ The articles that appeared in SRF's magazine, however, were published in a periodical. SRF itself held the copyright to each issue of the magazine. The 1909 Act allowed renewal by a copyright holder, even if not the original author or the author's next of kin, of copyrights to "periodical, encyclopedic, and collective works." 17 U.S.C. § 24 (repealed). A blanket copyright on a periodical protects its constituent parts as long as the publisher received the common law copyrights to those parts prior to publication. *See* 17 U.S.C. § 3 (repealed); *Mail & Express*, 192 F. at 900. Thus, if SRF succeeds at trial in proving that Yogananda informally transferred to SRF his common law copyrights in his individual articles, SRF's blanket copyrights on each issue of its magazine were sufficient to give SRF rights to the articles as well. SRF would then have been entitled to renew these copyrights under the exception contained in section 24 for periodical works.

Until 1940, section 24 also permitted individual authors to renew copyrights in periodical contributions "when such contribution has been separately registered." In 1940, Congress deleted the separate registration requirement, permitting individual authors to renew copyrights in periodical contributions even if the only initial copyright on the work existed by virtue of the publisher's blanket copyright. Ananda argues that our decision in *Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir.1988), *aff'd sub nom Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), holds that as a result of the 1940 amendment, only the author of a periodical contribution retains a renewal right in the work. This is incorrect. In *Abend*, we recognized that

the 1940 amendment granted a new renewal right in individual authors of magazine contributions. *See id.* at 1470–71. The discussion in *Abend* makes clear, however, that this new right did not extinguish the pre-existing right in the magazine publisher. Congress was simply concerned about situations in which the publisher went out of business before the initial copyright expired, leaving no one to renew the copyright and thus injecting the work prematurely into the public domain. *See id.* at 1471 (citing H.R.Rep. No. 1612, 76th Cong.3d Sess. 1 (1940)).

Under the unambiguous terms of section 24 of the 1909 Act, SRF was entitled to renew any initial copyrights in periodical articles that it validly obtained through an informal assignment of Yogananda's common law copyrights. We therefore reverse the district court's grant of summary judgment with regard to all periodical articles, and remand for determination of the factual issues regarding assignment.

## V. Recordings of Yogananda's Lectures

■ The 1909 Act does not cover sound recordings. SRF's rights, if any, in recordings of Yogananda's religious lectures are therefore governed by the common law of copyright and secured by California law. Cal. Civ.Code § 980 protects common law copyrights in sound recordings, and Cal. Civ.Code § 982 permits copyrights to be transferred. California courts define "works for hire" in a similar fashion as federal courts interpreting the provisions of the Copyright Act of 1909. *See Zahler v. Columbia Pictures Corp.*, 180 Cal.App.2d 582, 589, 4 Cal.Rptr. 612, 617 (1960) ("Where an employee creates something as part of his duties under his employment, the thing created is the property of his employer unless, of course, by appropriate agreement, the employee retains some right in or with respect to the product.").

The district court correctly rejected SRF's argument that Yogananda had created the recorded works as works for hire

**1330**

or as part of a corporate body, but incorrectly held that SRF had not presented a triable issue as to whether Yogananda ever assigned his common law copyrights in the recordings to SRF. We reverse the district court on the ground that SRF has introduced evidence sufficient to create a triable issue regarding assignment. For reasons we have already explained, the evidence is conflicting on the critical issue of intent to transfer intellectual property rights.

## VI. Photographs

The final category of works in which SRF claims valid copyrights are not works by Yogananda but rather photographs of Yogananda and another religious leader, taken by various third parties and published in SRF's magazine under its blanket copyright. For four of the photographs, SRF can identify no known photographer as the author. A fifth was taken by a man identified only by his name, Arthur Say, while the remaining photographs were taken by SRF employees Clifford Frederick and Durga Mata. The district court rejected SRF's claims that the photographs were taken as works for hire or by a corporate body, and held that SRF had not introduced a triable issue regarding assignment.

■ To succeed in a claim that the photographs were "works for hire," SRF must introduce evidence that the photographs were taken by an SRF employee or independent contractor at SRF's "instance or expense." *Lin–Brook,* 352 F.2d at 300. Likewise, in order to reach a jury on the issue of assignment, SRF must introduce evidence regarding the author's intent. *Urantia Found.,* 114 F.3d at 960. For the four photographs with unknown authors, SRF cannot satisfy either of these requirements; the district court's grant of summary judgment must be affirmed. Similarly, SRF offered no evidence that Arthur Say was an SRF employee or independent contractor or that he intended to transfer his common law copyrights to SRF. We therefore also affirm the district court's

grant of summary judgment with regard to the Arthur Say photograph.

■ The district court's grant of summary judgment with regard to the remaining photographs, all taken by SRF employees Clifford Frederick and Durga Mata, was principally based on the court's rejection of the declaration of Ananda Mata, SRF's Secretary and Treasurer. The district court characterized Ananda Mata's declaration testimony as "insufficient" and "uncertain," and commented on the possible inaccuracy of Ananda Mata's memory.

■ We conclude that the district court discounted the declarations by making a determination of credibility. This is something the court should not undertake at the summary judgment stage. *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505. Ananda Mata's declarations set forth facts based on personal knowledge that give rise to a triable issue regarding whether the Frederick and Durga Mata photographs were created for SRF as works for hire. Ananda Mata stated in her first declaration that Frederick and Durga Mata were SRF employees and that photographing Yogananda constituted part of their employment. Personal knowledge can be inferred from an affiant's position. *See Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Ind., Inc.,* 84 F.3d 1186, 1193 (9th Cir.1996) (general manager's personal knowledge of hiring events could be presumed); *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir.1990) (CEO's personal knowledge of various corporate activities could be presumed). As a corporate officer of SRF, Ananda Mata could be expected to know the identity of SRF employees and their tasks. Ananda Mata further stated in her declarations that the photographs were taken at her own instruction using equipment belonging to SRF. This constitutes personal knowledge of facts demonstrating that the photographs were taken at SRF's instance and expense.

We therefore hold that SRF has presented a triable issue as to whether the photographs taken by Frederick and Durga Mata were taken for SRF as works for hire. We reverse the district court's grant of summary judgment as to these works, and remand for further proceedings.

### CONCLUSION

We affirm the district court's grant of summary judgment for Ananda with regard to books copied during their renewal terms, the photographs by unknown authors, and the photograph by Arthur Say. We reverse and remand for further proceedings the claims of copyright infringement pertaining to the books copied during their initial terms, all periodical articles, the sound recordings, and the photographs by Clifford Frederick and Durga Mata.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party to bear its own costs.