**FLEISCHER STUDIOS, Inc., et al. v. RALPH A. FREUNDLICH, Inc., et al.**

District Court, S. D. New York.
Feb. 9, 1934.

Phillips & Nizer, of New York City (Louis Nizer, of New York City, of counsel), for plaintiffs.

Lind, Shlivek, Marks & Brin, of New York City (Max Shlivek, of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

My judgment in this case is in favor of the plaintiffs and I will give them a decree embodying an injunction, providing for a reference to a master for an accounting to determine what are the damages, if any, the plaintiffs have suffered. The decree may also provide for the delivery up, on oath, for destruction of the objects mentioned in paragraph E of the plaintiffs' prayers in the complaint.

■■ I. The embodiment of the artist's concept and not the artist's concept is what is protected by copyright. That embodiment here is shown in the animated cartoons which were copyrighted and which have been marked plaintiffs' Exhibit 1. Those cartoons are, of course, flat; that is, two dimensional.

The teaching of the Spark Plug Case, so called, King Features Syndicate v. Fleischer, 299 F. 533 (C. C. A. 2), is that there may be a three-dimensional infringement of a two-dimensional copyrighted drawing.

II. The case here, in my opinion, would be unchanged if the plaintiffs' doll, Exhibit 5, were entirely omitted from it. In fact, the introduction of that exhibit merely renders the infringement of the cartoons more noticeable to the ordinary eye which often finds it difficult to project the image of flat drawings into three-dimensional figures, whether such drawings be artistic or mechanical. Thus the plaintiffs' doll, made by the Cameo Doll Company, bridges the space between the plaintiffs' copyrighted animated cartoons and the defendant's infringement thereof by the doll which it made. It must be as a kind of visual bridge that the plaintiffs' doll must be regarded in this cause.

III. Here the plaintiff had created and embodied in his drawings a very much individualized little character whose popularity, according to the evidence, was wide and of which the knowledge was spread throughout this country, and, indeed, I believe it was testified, throughout the world by the production of these animated cartoons in moving picture houses.

The character which was depicted combined in appearance the childish with the sophisticated—a large round baby face with big eyes and a nose like a button, framed in a somewhat careful coiffure, with a very small body of which perhaps the leading characteristic is the most self-confident little bust imaginable. The result is very taking, and the cartoon, shown all over the world, presented a strong temptation to an infringer.

■ IV. The defendants, I find, yielded to this temptation and infringed the plaintiffs' copyright. It is quite true that they did not make an exact copy of the embodiment of the plaintiffs' character as depicted by Fleischer, but what they did make gives precisely the same impression because there is really no essential difference between the plaintiffs' drawing and the defendants' doll except that the hair is somewhat differently arranged.

What Mr. Freundlich did, as, I think, the evidence illustrates, was to make enough differences to create an argument but not enough to create an alibi.

■ The defendants' doll, therefore, comes within the definition of a copy which is laid down in the Spark Plug Case just mentioned above. Of course, an exact copy is not the only thing against which copyright protects.

A copy which is substantially the same and creates the same impression as the copyrighted sketch is, at least in the case of a pictorial or artistic copyright, as here, a trespass on the plaintiffs' protected zone and entitles him to relief against the infringer.

■ V. It does not seem to me there can be any question with regard to access in this case and on the question of intention I find against the defendant.

Neither Mr. Peruggi, the doll sculptor, or Mr. Freundlich made a very happy impression on me with regard to the question of the instructions as to the making of the defendant's doll. I accepted Mr. Freundlich's evidence that he had not known, when he gave Mr. Peruggi the order, that Mr. Peruggi had made the "Betty Boop" doll which I have referred to as plaintiffs' Exhibit 5, but I think it is perfectly fair to say that Mr. Peruggi himself seemed to me to be a little uncertain as to what the situation was, and, therefore, to be guarding himself. He said that he was shown what has been referred to as the "Prince" doll, which has been marked Exhibit 13, and that that was a direct imitation of "Betty Boop" and Mr. Freundlich also admits

that it was a "Betty Boop" imitation. He says that he showed it to the sculptor to indicate the size and the nature of the statuette which he wanted but told him; "Do not make it exactly like this." I believe, according to the statement made here today, he said that he wanted that type.

That sort of oblique suggestion can be very properly translated into an intention on Mr. Freundlich's part to come as near the "Betty Boop" doll as he possibly could.

Of course, he did not want to get into a lawsuit, either for unfair competition or for a breach of copyright. That is perfectly obvious. But, when you show a man something, and say, "This is about what I want but don't make it exactly like this," that is a suggestion which I think is comparable to the way in which they used to sell grape juice during prohibition with accompanying instructions not to put any raisins in it because if that was done the grape juice would ferment. It is exactly the same method of approach. Thereafter the doll was brought back, Mr. Freundlich approved it, and then he began to sell it. The question of how many sales were made, of course, is something that has to be brought out before the master.

VI. As to the notice of the copyright, I find that there was adequate notice on the front of the skirt of the plaintiffs' doll where there is a notice " 'Betty Boop' Des, and Copyright by Fleischer Studios." I am unimpressed with the suggestion that because the word "Inc." did not follow the word "Fleischer Studios," that, therefore, there was some infirmity in the notice. Until directed to do so by a higher court, I refuse so to stick the bark and entertain so technical an attitude with regard to a copyright notice.

VII. This short opinion may stand as the findings of fact and the conclusions of law on the case and a decree may be presented on notice for settlement.

I will appoint Theodore S. Kenyon, Esquire, as the special master to pass on the damages and accounting, unless the damages and the accounting can be agreed between the parties.

The question of the allowance of any reasonable counsel fee will be reserved until the ultimate decision of the master on the question of damages and the accounting. This question of the fee is to be reported back to me, and when the final decree is settled, counsel for the plaintiffs may apply to me, on due notice, to fix the fee.