**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOE PRIESTLY STUARD,
            *Petitioner-Appellant,*

v.

TERRY L. STEWART, Deputy,
            *Respondent-Appellee.*

No. 03-15300

D.C. No.
CV-00-02149-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Submitted September 14, 2004*
San Francisco, California

Filed March 22, 2005

Before: James L. Oakes,** Andrew J. Kleinfeld, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Kleinfeld

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable James L. Oakes, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

## COUNSEL

Donald W. MacPherson (briefed), The MacPherson Group, Phoenix, Arizona, for the appellant.

Vincent L. Rabago, Assistant Attorney General, Criminal Appeals Section, Tucson, Arizona, for the appellee.

## OPINION

KLEINFELD, Circuit Judge:

This is a habeas petition in which the petitioner claims he was unconstitutionally forced to choose between two constitutional entitlements, his right to a speedy trial and his right to effective assistance of counsel.

### Facts

Stuard committed an astonishing number of armed robberies. His restitution order, for the robberies of which he was

convicted, showed a few hundred dollars each payable to Subway, Baskin Robbins, Domino's, Dairy Queen, Kentucky Fried Chicken, Video Doctor, Little Caesars, and Payne & Morrison Flowers. Altogether he was convicted of ten armed robberies and four aggravated assaults, and sentenced to 266 years.

As Stuard approached trial, about three months after being indicted on one of the robberies, the prosecutor moved to consolidate the case for trial with another indictment charging him with the rest. This put considerable pressure on defense counsel, who now had to try a much more extensive case that involved many more witnesses. On September 19, at the pretrial conference held to set a firm trial date, the prosecutor suggested that defense counsel might need more time to prepare than the Arizona speedy trial rule[1] would allow, and expressed concern that the conviction she expected to win might be subject to challenge if defense counsel was forced to try the case without adequate preparation time. The speedy trial rule required that trial be within eleven days, unless the defendant waived his right to have trial that fast. The prosecutor and the court expressed willingness to accept a delayed date if defendant wanted it. Though the prosecutor said she did not think that defense counsel could be ready, defense counsel was ambiguous in his assessment of whether he could prepare in time. Defense counsel told the judge that a date within the Arizona rule deadline would be "kind of difficult," but that his client did not want to waive his right to trial within the next eleven days.

The judge then engaged in an extended colloquy with Stuard, explaining that his lawyer felt that another six to eight weeks would be desirable for preparation, and that his lawyer had not yet had sufficient time to personally question the detectives on the case. Stuard told the judge "I am not interested in waiving any time at all," and "I don't know why he

---

[1]Ariz. R. Crim. P. 8.

would need to talk to the detectives in the case because they were already in the police report." The judge patiently explained that his lawyer might be able to generate some contradictions between what the detectives said orally and what they said in the police report, which would help the defense, but Stuard insisted on going to trial within the eleven days allowed by the rule. Stuard told the judge that even though some delay would mean he "could get a better defense," he did not "want to spend the rest of [his] life in jail waiting for trial." The judge reiterated to Stuard that it was up to him whether he wanted to waive any claim to better preparation of counsel. Stuard snapped back that "there is a sort of Catch-22" between his right to a speedy trial and his right to have his lawyer fully informed. Although Stuard recognized that his lawyer was "probably overworked," he remarked "that's not my problem."

In fact it *was* his problem. He could wind up spending the rest of his life locked up after trial, as he knew from plea negotiations. But he insisted on going to trial in the face of what appears to have been good advice to the contrary. His lawyer said "I can try to be ready," and skillfully shifted to the prosecutor the burden of making discovery immediately available. (Of course, trial tactics often have layers upon layers. It is conceivable that the prosecutor's generosity was really because she needed more time, and that Stuard's insistence on racing huckledebuck to trial was because he knew some witnesses she had not yet found.)

On the day set for trial, September 30, Stuard's lawyer said "I guess we're announcing we're ready." The prosecutor, not defense counsel, pushed for delay. She expressed concern that she could win the case and lose the appeal if Stuard could establish that he had been forced to trial without adequate time for his lawyer to prepare. The judge again engaged in an extended and careful colloquy with Stuard, to assure the court that Stuard was acting knowingly and voluntarily in declining to waive his right to immediate trial, even though he could get

more time for his lawyer to prepare if he waived. Stuard insisted on proceeding.

They had yet another conference before trial commenced, this time in chambers (but transcribed). The judge obtained Stuard's assurances that he still wanted to proceed to trial immediately, and also that he had been informed of and had turned down an offer of a plea bargain with his eyes open. Stuard told the judge that he was ready to proceed, and that he had turned down a deal for forty years, because "I offered — I would do 15, because I figure that's about the number of robberies I did."

After his direct appeal, Stuard sought post-conviction relief in the Arizona courts based on a variety of claims, including ineffective assistance of counsel. The Superior Court of Arizona held that Stuard "clearly waived any argument regarding preparation of his attorney" and the Arizona Court of Appeals summarily denied review. He then petitioned for a writ of habeas corpus. The district court denied his petition, and he appeals. The only issue certified on appeal (we decline to expand the certification) is "whether the district court erred by determining that Stuard, by asserting his right to a speedy trial, waived his right to raise ineffective assistance of counsel claims based on counsel's lack of preparation."

**Analysis**

Though the state's brief claims that Stuard procedurally defaulted in state court, it presents no argument for why or how this default came about, and merely tells us to root around in papers it filed elsewhere and infer the argument. For all we know, Stuard may have procedurally defaulted, but we are not going to construct an argument for the state sua sponte, depriving Stuard's counsel of a fair chance to respond

to it. The procedural default argument is waived because it is not briefed.[2]

In a federal habeas corpus petition challenging state confinement, the petitioner must demonstrate that the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."[3] Thus, Stuard needs a Supreme Court decision that the Arizona court acted contrary to or unreasonably applied. The ones he cites are *Simmons v. United States*[4] and *United States v. Jackson.*[5]

In *Simmons*, the only way the defendant could show standing to assert his Fourth Amendment rights against a search of his luggage was to testify that it was his luggage, but compelling him to testify would violate his Fifth Amendment right not to incriminate himself.[6] In *Jackson*, if the defendant claimed his Sixth Amendment right to trial by jury, then he exposed himself to the death penalty, which he could avoid by waiving his Fifth Amendment right not to plead guilty.[7] In both cases, the Supreme Court relieved the defendant of the burden of these choices.

**[1]** Stuard argues that he was burdened with a similar "Catch-22."[8] But the cases he cites do not support him

---

[2]*Trest v. Cain*, 552 U.S. 87, 89 (1997).

[3]28 U.S.C. § 2254(d)(1).

[4]*Simmons v. United States*, 390 U.S. 377 (1968).

[5]*United States v. Jackson*, 390 U.S. 570 (1968).

[6]*Simmons*, 390 U.S. at 381.

[7]*Jackson*, 390 U.S. at 581.

[8]In Joseph Heller's World War II novel, Yossarian tries to avoid having to fly any more dangerous combat missions by claiming that he is crazy. The doctor explains to him that only a crazy person would willingly fly combat missions after a lot of close calls, but rational concern for his own safety proves that a person is not crazy. So, anyone who asks to be relieved from flying more combat missions because he is crazy can't be relieved, since his rational request proves he isn't crazy. "That's some catch, that Catch-22," acknowledges Yossarian. Joseph Heller, *Catch-22* at 46-47 (Dell ed. 1962) (1955).

because he has not demonstrated a constitutional right that he was compelled to forfeit. Stuard suggests that he was compelled to forfeit his right to the effective assistance of counsel, but offers no argument, no evidence, and no authority to satisfy either the deficient performance prong or the prejudice prong of *Strickland v. Washington*.[9] All the record shows is that the prosecutor, not defense counsel, thought that to preserve her record from challenge it would be desirable to give defense counsel more time. Defense counsel said he would have liked more time to do more interviews of detectives whose reports he had read, and to spend more time examining the real evidence he had looked at in the prosecutor's office. That is a far cry from acting "outside the wide range of professionally competent assistance."[10] Stuard makes no attempt to fit his attorney's performance within the "ineffective assistance" category delineated by *Strickland*, and does not cite the case as one that the state court acted contrary to or unreasonably applied.

[2] Likewise, Stuard does not attempt to show that he could have obtained more preparation from his busy lawyer only by staying in jail past the time when the Sixth Amendment would entitle him to trial. All he shows is that, to get the additional time that the prosecutor, the judge, and his lawyer would have liked the defense to have, he would have had to waive his right to the speedy trial deadline provided in the Arizona court rule.[11]

---

[9]*Strickland v. Washington*, 466 U.S. 668 (1984).

[10]*Id.* at 690.

[11]Ariz. R. Crim. P. 8.2(b) states that:

> Every person held in custody in this state on a criminal charge shall be tried by the court having jurisdiction of the offense within 120 days from the date of the person's initial appearance before a magistrate on the complaint, indictment or information, or within 90 days from the date of the person's arraignment before the trial court, whichever is the lesser.

**[3]** Though the rule and the Sixth Amendment both contain the right to a "speedy trial," they mean different things. The constitutional rule imposes a flexible limit that is far longer than the Arizona rule in most or all cases. The Supreme Court in *Barker v. Wingo* held that "we cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."[12] In *United States v. Aguirre*,[13] we held that "a five year delay is long enough to trigger a further look," but concluded that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all the *Barker v. Wingo* factors were balanced.[14]

**[4]** Stuard was going to trial three months after the indictment, and had the power in his own hands to delay his trial for another month or two to give his lawyer more time to prepare. The extra time would not even get his trial past the first *Barker v. Wingo* factor of an "uncommonly long" delay,[15] and Stuard presents no argument for any of the factors. The constitutional right to a speedy trial was not even implicated in this case, just a state rule with the same name.

**[5]** The Supreme Court said in *McGautha v. California*[16]

---

[12]*Barker v. Wingo*, 407 U.S. 514, 521 (1972).

[13]*United States v. Aguirre*, 994 F.2d 1454, 1457 (1993).

[14]The factors to consider are:

> [1] whether delay before trial was uncommonly long, [2] whether the government or the defendant is more to blame for the delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result [sic].

*Aguirre*, 994 F.2d at 1455 n.1 (citing *Doggett v. United States*, 505 U.S. 647, 657 (1992), and *Barker*, 407 U.S. at 530) (brackets and numbering in original).

[15]*Doggett*, 505 U.S. at 651 (citing *Barker*, 407 U.S. at 530).

[16]*McGautha v. California*, 402 U.S. 183 (1971), *vacated on other grounds*, 408 U.S. 941 (1972).

that "[t]he criminal process . . . is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."[17] Far from showing that he was unconstitutionally forced into foregoing one constitutional right for another, Stuard has not shown that he gave up any constitutional right at all, or that any constitutional right was even at stake. He merely was faced with a choice between giving up one advantage for another. *Simmons* and *Jackson* do not entitle a defendant to obtain all possible advantages where giving up one is necessary to obtaining the other. Even had there been a serious claim to ineffective assistance of counsel, because trial on the consolidated cases came only ten days after the consolidation, there was no constitutional right to a speedy trial that had to be given up to avoid ineffectiveness of counsel.

The Seventh Circuit decided a similar claim similarly, in *United States v. Ashimi*.[18] About the only distinction is that Ashimi called his problem a "Hobson's Choice"[19] instead of a Catch-22. *Ashimi* holds that *Simmons* is not violated when a defendant is forced to choose between a statutory right and a constitutional right.[20]

---

[17]*Id.* at 213 (internal citation and quotation omitted). Though *McGautha* was later vacated in part in light of *Furman v. Georgia*, 408 U.S. 238 (1972), the Supreme Court and this court have continued to rely on the quoted passage above. *See Bonin v. Calderon*, 59 F.3d 815, 839-40 (9th Cir. 1995) (holding that the reasoning of *McGautha* was controlling in the case before it).

[18]*United States v. Ashimi*, 932 F.2d 643 (7th Cir. 1991).

[19]Tobias Hobson supposedly rented out horses in Cambridge, and told customers that their choice was to take the horse nearest the stable door or take no horse at all. 3 The Oxford English Dictionary 151 (2d ed. 1989).

[20]*Ashimi*, 932 F.3d at 647-48.

**[6]** Not all choices are Catch-22s. A compulsion to choose between two advantages, where the compulsion does not force the defendant to forfeit any constitutional entitlements, is not contrary to or an unreasonable application of *Simmons* and *Jackson*.

**AFFIRMED.**